# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) <br> ) <br> ) Case No. 3:04CR00023-001 <br> ) |
| v. | ) <br> ) **OPINION** <br> ) |
| **COLIN F. GORDON**, | ) <br> ) By: James P. Jones |
| Defendant. | ) United States District Judge <br> ) |

*Nancy S. Healey, Assistant United States Attorney, Charlottesville, Virginia, for United States; Colin F. Gordon, Pro Se Defendant.*

Defendant Colin F. Gordon ("Gordon"), a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2010), alleging that his guilty plea was involuntary because the government failed to disclose favorable information and because he was not advised of the possibility of a partly concurrent sentence. Upon review of the record, I find that Gordon's motion must be denied.

I

A grand jury of this court returned a multi-count Superseding Indictment on July 21, 2004, charging Gordon and others with conspiracy, related cocaine and crack cocaine trafficking and firearms offenses, and immigration offenses. Gordon pleaded guilty on August 30, 2004, to Count Five, which charged him with illegally reentering

the United States after having been deported subsequent to a conviction of an aggravated felony.[1]

The grand jury returned a Second Superseding Indictment against Gordon on September 15, 2004, adding two charges of distribution of cocaine base. The government filed an Information pursuant to 21 U.S.C.A. § 851 (West 1999), setting forth three prior felony drug offenses that made Gordon subject to a mandatory life sentence on the drug conspiracy charge. Gordon pleaded guilty on November 1, 2004, pursuant to a written Plea Agreement, to two charges: conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base and 500 grams or more of cocaine, in violation of 21 U.S.C.A. §§ 841(a)(1), 841(b)(1)(A), and 846 (West 1999 & Supp. 2010) (Count One); and using or carrying one or more firearms during and in relation to a drug trafficking crime or knowingly possessing such firearms in furtherance of such crime, in violation of 18 U.S.C. § 924(c) (West Supp. 2010) (Count Six).

Under the Plea Agreement, the government agreed to file a Second Amended Information under § 851 that reduced Gordon's statutory mandatory minimum sentence on the drug trafficking offense to 20 years imprisonment. The agreement also included a stipulation to a relevant drug weight of 1.5 kilograms or more of cocaine base; a four-level enhancement for role in the offense; an agreement that Gordon should be sentenced as a Career Offender, pursuant to the United States

---

[1] None of Gordon's § 2255 claims concern his conviction or sentence for Count Five of the Superseding Indictment.

Sentencing Manual ("USSG") § 4B1.1; and an agreement that since the government filed the amended information, Gordon's sentence on Count One should be no lower than 360 months imprisonment, with a consecutive sentence on Count Six of no less than 60 months, for a total minimum sentence of 420 months. Paragraph 13 of the Plea Agreement stated that Gordon "agree[d] to waive [his] right to collaterally attack, pursuant to [28 U.S.C.A. § 2255], the judgment and any part of the sentence imposed by the court."

On September 28, 2009, Gordon was sentenced to a total of 420 months of imprisonment, to be followed by ten years of supervised release. The United States Court of Appeals for the Fourth Circuit affirmed the judgment. *United States v. Gordon*, 290 F. App'x 638 (4th Cir. 2008), *cert. denied*, 129 S. Ct. 1636 (2009).

Gordon now attacks the judgment on the following grounds:

1. The government failed to disclose before trial statements by codefendant (and brother) Andrew Gordon that were favorable to the defense, which renders his guilty plea and the waiver of § 2255 rights unknowing and involuntary; and

2. He did not know that his term of imprisonment under Count Six could have run concurrently rather than consecutively with his term under Count One, thus rendering his guilty plea and the § 2255 waiver unknowing and unenforceable.

The government has filed a Motion to Dismiss, arguing that all claims must be dismissed as waived, pursuant to the Plea Agreement. Gordon has responded, making the matter ripe for disposition.

II

A. PLEA AGREEMENT WAIVER OF § 2255 RIGHTS.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether the waiver is intelligent and voluntary depends "'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'" *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). When a defendant alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea and the plea agreement waiver of § 2255 rights. *See, e.g., Lemaster*, 403 F.3d at 221-22.

The court's waiver analysis must focus first on the defendant's statements during the plea hearing. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* If the court determines that the

defendant's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Id.* at 220 (internal quotation marks and citations omitted).

### B. GORDON'S VALID GUILTY PLEA AND WAIVER.

Before accepting Gordon's guilty plea to Counts One and Six, the court questioned him thoroughly to ensure that his plea was knowing and voluntary. Gordon indicated that he was 34 years old and had completed the eleventh grade in school. He stated that he was taking medication for heartburn and sometimes suffered symptoms of a hernia, but he twice affirmed that nothing about his medical condition would prevent him from understanding the court proceedings. Gordon also stated that he had once received rehabilitative treatment related to a cocaine addiction, but was not under the influence of any drug or medication at the time of the plea.

Gordon affirmed that he had read and understood the Second Amended Information regarding his prior convictions. He also affirmed that he was fully satisfied with counsel's representation, that he understood the trial rights he was waiving by pleading guilty, that he understood the elements the government would have to prove at trial and the mandatory minimum sentence he faced, and that he understood the court would consider sentencing guidelines in determining his sentence.

Counsel then summarized the terms of the Plea Agreement, and Gordon affirmed that he had had adequate time to discuss the agreement with counsel and had read and understood its terms. The court expressly questioned Gordon about his understanding of the agreement's provisions whereby he waived his right to bring a collateral attack under § 2255, and Gordon indicated that he was freely and voluntarily giving up that right. When the court then asked whether Gordon was pleading guilty, Gordon stated, "I'll take the plea, Your Honor. . . . I'm not happy with it, but I'll take the plea." (Guilty Plea Tr. 22, Nov. 1, 2004.) Gordon denied that anyone had made any promise to him outside the Plea Agreement to induce him to plead guilty or that anyone had attempted to force him to plead guilty. After hearing the prosecutor's recitation of the evidence, Gordon affirmed his intention to plead guilty to Counts One and Six of the Second Superseding Indictment.

I find from this record that Gordon's guilty plea and the waiver of his right to bring this collateral attack under § 2255 were knowing and voluntary and therefore, valid.

Gordon has submitted an affidavit purportedly signed by Andrew Gordon, stating that after his arrest, Andrew gave statements to state law enforcement officers indicating that he and Noel Gordon had their own drug operation, of which Gordon knew nothing, and that the large amounts of cash and drugs seized from hotel rooms occupied by Andrew and Noel Gordon belonged to these individuals, and not to Gordon. The defendant asserts that he did not know about Andrew Gordon's favorable statements until after the appeals process had concluded.

Gordon asserts that both of his claims in this habeas action concern issues that render his plea and his waiver of § 2255 rights invalid. Specifically, he argues that if he had known about his brother's statements to police and about an interpretation whereby his § 924(c) sentence would be concurrent rather than consecutive, he would not have accepted the Plea Agreement. I find that his claims do not undermine the validity of his plea in any respect.

Gordon's claims are based on assertions that directly contradict statements he made to the court during the plea colloquy. The court questioned Gordon expressly about his understanding that by pleading guilty, he was waiving his right to confront possible witnesses against him, and Gordon affirmed that he understood. The court also asked him if he had had an adequate opportunity to discuss with counsel the likely sentencing calculations under the guidelines and applicable statutes, and Gordon affirmed that he understood. Furthermore, Gordon affirmed his understanding of the provision waiving his right to raise claims about such matters in a § 2255 action. In exchange for these waivers, Gordon achieved the benefit, among other things, of avoiding a mandatory life sentence.

It was entirely foreseeable to Gordon that he was not aware at the time of the guilty plea of all possible issues related to impeachment of government witnesses, the strengths or weaknesses of the government's case, or the calculation of a proper sentence. Yet, because he wanted the sentencing advantage offered by the Plea Agreement, he nevertheless chose to waive the trial procedures that would have allowed him to develop the very claims that he presents here. He cannot now

"disown his solemn admissions in open court," accepting a finding of guilt for the crimes charged, "simply because it later develop[ed] that the [prosecution] would have had a weaker case than [he] had thought" or that sentencing factors "then assumed applicable" have been differently interpreted under "subsequent judicial decisions." *Brady v. United States*, 397 U.S. 742, 757 (1970). Accordingly, I find that Gordon's current claims have no bearing on the validity of his guilty plea or his waiver of § 2255 rights. *Lemaster,* 403 F.3d at 221-22. His claims fall within the scope of that waiver, and he received the sentence for which he bargained. For the stated reasons, I will grant the Motion to Dismiss based on the defendant's valid waiver of collateral attack rights. In any event, for the reasons that follow, I also find that Gordon's claims are without merit.

C. MERITLESS CLAIMS.

1. Undisclosed Codefendant Statements.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The standard for determining the materiality of evidence is whether there is a reasonable probability that, but for the prosecution's suppression of such evidence, the result of the proceeding would have been different. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

The *Brady* rule applies at trial and "exists to preserve the fairness of a trial verdict and to minimize the chance that an innocent person would be found guilty."

*United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010). The guilty plea context does not present the same fairness concerns because the defendant's guilt is admitted. *Id.* Accordingly, the prosecution's failure to disclose favorable, material impeachment information prior to a guilty plea does not establish a constitutional violation on which the defendant can invalidate his plea. *United States v. Ruiz*, 536 U.S. 622, 629-30 (2002) (finding prosecutor has no duty under *Brady* to disclose impeachment information before guilty plea)

Andrew Gordon was listed as a potential government witness in materials Gordon reviewed before entering his guilty plea. Gordon claims that Andrew's undisclosed statements to law enforcement would have impeached Andrew's trial testimony and would have demonstrated that Gordon did not conspire with his codefendants to traffic in cocaine and crack cocaine and thus should not have been held accountable for large amounts of drugs and cash seized from them.

To the extent that Andrew's statements are merely potential impeachment material, Gordon's *Brady* claim fails under *Ruiz*, because failure to disclose impeachment information prior to the defendant's entry of a guilty plea is not a constitutional violation. *Id*.

"To date, the Supreme Court has not addressed the question of whether the *Brady* right to exculpatory information, in contrast to impeachment information, might be extended to the guilty plea context." *Moussaoui*, 591 F.3d at 286 (citing conflicting circuit decisions on this issue).

However, even assuming that Andrew's statements might be deemed not only impeachment material, but also exculpatory evidence, they do not support a habeas claim under *Brady* for a different reason — they are not material as defined in *Kyles*. In light of the government's other extensive evidence that Gordon did conspire with his codefendants to obtain and sell large amounts of illegal substances, I find no likelihood that use of Andrew's undisclosed statements would have increased Gordon's chance of acquittal at trial to any significant degree. Accordingly, there is no reasonable probability that the pre-guilty plea disclosure of the statements would have caused Gordon to reject the Plea Agreement that allowed him to escape a mandatory life sentence. *Kyles*, 514 U.S. at 434. For these reasons, I find that Gordon's *Brady* claim is without merit.

2. The Sentencing Claim.

Gordon's second claim is now foreclosed by the Supreme Court's recent decision in *Abbott v. United States*, Nos. 09-479, 09-7073, 2010 WL 4569898 (U.S. Nov. 15, 2010). This decision, which expressly rejected the rationale of the precedent on which Gordon relies, held that

> a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction. Under the "except" clause as we comprehend it, a § 924(c) offender is not subject to stacked sentences for violating § 924(c). If he possessed, brandished, and discharged a gun, the mandatory penalty would be 10 years, not 22. He is, however, subject to the highest mandatory minimum specified for his conduct in § 924(c), unless another provision of law directed to conduct proscribed by § 924(c) imposes an even greater mandatory minimum.

2010 WL 4569898 at *5.

IV

In conclusion, I am of the opinion that the Motion to Dismiss must be granted, and relief denied, based on the defendant's valid Plea Agreement waiver of the right to collaterally attack the judgment. Alternatively, I find that his claims are without merit. A separate Final Order will be entered herewith.

DATED: December 2, 2010

/s/ JAMES P. JONES
United States District Judge